RECEIVED
IN ALEXANDRIA, LA.

DEC 3 0 2009

TONY R. MOORE, CLERK
BY‾‾‾‾‾‾‾‾‾ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**CLYDE CODY BAILEY, JR.**                    **CIVIL ACTION NO. 1:08-cv-01904**

-vs-                                                        **JUDGE DELL**

**DANNY DANIELS**                              **MAGISTRATE JUDGE KIRK**

## R U L I N G

Two cross-motions for summary judgment are pending before the Court:

(1)     a Motion for Summary Judgment filed by the plaintiff (Doc. 13), Clyde Cody

Bailey, Jr. ("Mr. Bailey"), which is hereby **DENIED**; and

(2)     a Motion for Summary Judgment filed by the defendant (Doc. 25), Danny

Daniels ("Mr. Daniels"), which is hereby **GRANTED**.

The reasons for these rulings will be explained more fully below.  Final disposition will

follow by a separate judgment.

## I.     Background

This lawsuit arises out of a series of events that took place of January 2, 2007.  On

that morning, Mr. Daniels and several companions were deer hunting in Catahoula

Parish, and were using at least one hunting dog that had been fitted with a "tracking

collar."  The tracking collar allowed the hunters to pinpoint the dog's position using

locator technology.

Mr. Daniels and one of his fellow hunters, Scott Nugent ("Mr. Nugent"), were

attempting to locate one of the hunting dogs using the tracking collar.  At some point,

the two hunters passed Mr. Bailey's truck on a rural road in Catahoula Parish, Louisiana.

Judging by indications from the tracking device, Mr. Nugent believed that the dog was

inside of Mr. Bailey's truck. Therefore, he and Mr. Daniels pursued Mr. Bailey and attempted to flag him down.[1] Mr. Bailey initially accelerated away from the hunters, but eventually stopped his vehicle. At this point, the three men were in LaSalle Parish.

Once Mr. Bailey stopped his vehicle, a confrontation ensued in which Mr. Daniels, a deputy sheriff with the Rapides Parish Sheriff's Office ("RPSO"), accused Mr. Bailey of killing his hunting dog. Mr. Daniels called the RPSO using his cellular telephone, reported Mr. Bailey's license plate number, and obtained from an unknown operator at least some identifying information on Mr. Bailey, including his name.[2] Once again, the confrontation took place in LaSalle Parish, not in Rapides Parish. Moreover, it is conceded that Mr. Daniels was not acting in his official capacity as a RPSO deputy when he obtained the identifying information.

Mr. Bailey then contacted the Catahoula Parish Sheriff's Office (CPSO), and two deputies responded to the call. As a result of the CPSO investigation, Mr. Bailey was arrested and charged with the crime of theft under La. R.S. 14:67. On September 18, 2007, in the matter of State of Louisiana v. Clyde C. Bailey, Jr., No. 07-0006, Mr. Bailey was convicted of misdemeanor theft. He was sentenced to a term of six months imprisonment, which was suspended, and was ordered to pay $2,000 restitution and to

---

[1] Mr. Bailey insists that Mr. Nugent was driving his truck alone at the time that he first confronted Mr. Bailey. Several minutes later, Mr. Daniels arrived, according to Mr. Bailey. Testimony by Mr. Daniels at the criminal trial arising from this matter seems to indicate that he and Mr. Nugent were driving separately. (Doc. 27-1, p. 24). This point, however, is not material to the Court's determination of the motions pending in the case.

[2] There is also a discrepancy between the parties as to exactly what information Mr. Daniels received from the RPSO operator. Mr. Daniels claims that he was only given Mr. Bailey's name, while Mr. Bailey states that the operator gave out both his name and his address. We will explore this discrepancy more fully below.

serve a twenty-four-month term of supervised probation.

On December 5, 2008, Mr. Bailey filed suit in this Court, seeking an award of damages against Mr. Daniels in the amount of $10,000, costs, and such other equitable and punitive relief as may be appropriate. (Doc. 1). In this initial complaint, Mr. Bailey alleged that Mr. Daniels violated the provisions of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*, as well as 18 U.S.C. § 242, a criminal statute relating to the deprivation of a victim's rights by a person acting under color of law.

Mr. Bailey filed a motion for summary judgment on June 29, 2009 (Doc. 13), alleging that the defendant unlawfully obtained personal information in connection with Mr. Bailey's motor vehicle records, and disclosed that information to others. Mr. Daniels responded to this motion, and subsequently filed his own motion for summary judgment (Doc. 25), arguing that: (1) he was justified in using Mr. Bailey's license plate number to investigate the possible theft of his dog and/or tracking collar, which is a permissible use of the information exempted by the DPPA; (2) he never used, disclosed, or sold the personal information that he obtained, because it became unnecessary to do so after Mr. Bailey initiated the CPSO investigation which led to his arrest.

We have carefully considered the parties' filings, the record, and the evidence presently before the Court. We also note that, with the filing of these cross-motions, we have all of the evidence before us that would likely appear if a trial were held on the merits. As such, we are now prepared to rule on both competing motions in the case.

## II.   **Summary Judgment Standard**

Under Rule 56(c), the Court will grant a party's motion for summary judgment

only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Where adverse parties have filed cross-motions for summary judgment, we "'review each party's motions independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'"  Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009) (quoting Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 499 (5th Cir. 2001)).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment.  Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

The Court also notes that the filing of cross-motions "does not necessarily constitute an agreement to trial on a stipulated record."  John v. State of La. Bd. of Trs., 757 F.2d 698, 705 (5th Cir. 1985).  Likewise, the fact that both parties argue there are no genuine issues of material fact does not mandate that a district court resolve the dispute without a trial.  Dotson v. City of Indianola, 739 F.2d 1022, 1026 n.5 (5th Cir. 1984).  Rather, in the context of this case, Mr. Bailey will be entitled to summary judgment if he can meet the Rule 56(c) standard as to each of the required elements of his claim, while the Mr. Daniels need only negate one of those essential elements.

See Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

III.    **Law and Analysis**

Mr. Bailey seeks relief under two federal statutes, which we will analyze

independently.  The Court notes that Mr. Bailey, unlike Mr. Daniels, is proceeding pro

se.  As a result, and in accordance with settled precedent, the Court holds Mr.

Bailey's filings to a less exacting standard than the filings of an attorney, and

construes Mr. Bailey's arguments liberally.  See Haines v. Kerner, 404 U.S. 519, 520-21

(1972); Parker v. Fort Worth Police Dept., 980 F.2d 1023, 1026 (5th Cir. 1993).

A.    **Mr. Bailey's Claim Under 18 U.S.C. § 242**

The plaintiff contends that Mr. Daniels, while acting under color of law,

deprived him of rights secured by federal law.  The controlling statute in this claim,

18 U.S.C. § 242, provides as follows:

> Whoever, under color of any law, statute, ordinance, regulation, or
> custom, willfully subjects any person in any State, Territory,
> Commonwealth, Possession, or District to the deprivation of any rights,
> privileges, or immunities secured or protected by the Constitution or
> laws of the United States, or to different punishments, pains, or
> penalties, on account of such person being an alien, or by reason of his
> color, or race, than are prescribed for the punishment of citizens, shall
> be fined under this title or imprisoned not more than one year, or both;
> and if bodily injury results from the acts committed in violation of this
> section or if such acts include the use, attempted use, or threatened use
> of a dangerous weapon, explosives, or fire, shall be fined under this title
> or imprisoned not more than ten years, or both; and if death results from
> the acts committed in violation of this section or if such acts include
> kidnapping or an attempt to kidnap, aggravated sexual abuse, or an
> attempt to commit aggravated sexual abuse, or an attempt to kill, shall
> be fined under this title, or imprisoned for any term of years or for life, or
> both, or may be sentenced to death.

"[T]he term 'willfully' [in § 242] implies conscious purpose to do wrong and intent to

deprive another of a right guaranteed by the Constitution or other federal law."

United States v. Sipe, 388 F.3d 471, 480 n.21 (5th Cir. 2004).

In the summary judgment motion, defense counsel suggests that § 242 "does authorize a private [civil] cause of action." (Doc. 25-1, p. 3 n.3). That statement is incorrect. At no point does § 242, or any parallel or enabling provision, even mention civil liability.[3] To the contrary, it is well settled that "18 U.S.C. §§ 241 and 242 do not provide a basis for civil liability," but rather, are purely criminal provisions. Gill v. State of Tex., 153 F. App'x 261, 262 (5th Cir. 2005) (citing Hanna v. Home Ins. Co., 281 F.2d 298, 303 (5th Cir. 1960); Ali v. Shabazz, 8 F.3d 22 (5th Cir. 1993)).[4] Mr. Bailey, "as a private citizen . . . has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." See id. (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); United States v. Batchelder, 442 U.S. 114, 124 (1979)).

As such, no set of facts could provide Mr. Bailey with a basis for relief under 18 U.S.C. § 242, and Mr. Daniels is entitled to judgment as a matter of law.[5] Therefore, Mr. Daniels's motion for summary judgment is GRANTED as to this particular claim.

---

[3] The Fifth Circuit has referred to 18 U.S.C. § 242 as "[t]he criminal analogue to" 42 U.S.C. § 1983. Johnson v. Kegans, 870 F.2d 992, 1005 n.4 (5th Cir. 1989). Nonetheless, the court emphasized that § 242, "not surprisingly, does not provide for a private right of action." Id.

[4] Other districts have rejected similar allegations of civil liability under § 242. See Parham v. Clinton, No. H-09-1105, 2009 WL 2870671, at *8 (S.D. Tex. Aug. 31, 2009) (holding that because "criminal statutes do not provide a basis for liability in a civil action," allegations that the defendants had violated the plaintiffs' civil rights under 18 U.S.C. § 242 "do not state a claim upon which relief can be granted or a valid basis for subject matter jurisdiction"); Savannah v. United States, No. 3:07-CV-2052-O ECF, 2009 WL 1181066, at *1 (N.D. Tex. Apr. 30, 2009) ("Plaintiff's reliance on 18 U.S.C. §§ 241 and 242 does not provide a basis for civil liability."); Haffke v. Dallas/Fort Worth Int'l Airport Bd., No. Civ.A. 3-01CV0997-N, 2002 WL 31246827, at *2 (N.D. Tex Oct. 3, 2002) (holding that §§ 241 and 242 "do not provide a basis for civil liability").

[5] Because the plaintiff is not entitled to relief under the cited statute as a matter of law, any factual dispute regarding whether Mr. Daniels acted under color of law is irrelevant at this juncture, and will not preclude the granting of summary judgment.

## B.    Mr. Bailey's DPPA Claim

Mr. Bailey also seeks relief under the DPPA, alleging that Mr. Daniels unlawfully obtained and disclosed to others personal information contained in Mr. Bailey's motor vehicle record.  Mr. Daniels concedes that he used Mr. Bailey's license plate number "to obtain Bailey's identity." (Doc. 24, p. 2).  However, Mr. Daniels also maintains that he never used the information to locate Mr. Bailey or even to initiate the CPSO investigation, because Mr. Bailey stopped his vehicle and called the CPSO himself during the altercation.  (Doc. 24, p. 2).  It was the CPSO investigation initiated by Mr. Bailey, rather than some impermissible use of the information by Mr. Daniels, which ultimately led to his arrest.

Under 18 U.S.C. § 2722, two distinct activities related to personal information obtained from motor vehicle records are prohibited:

> (a) Procurement for unlawful purpose.--It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
> (b) False representation.--It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

Unlike 18 U.S.C. § 242, as discussed above, the DPPA provides private litigants with the right to seek civil redress for violations of the statute:

> (a) Cause of action.--A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
>
> (b) Remedies.--The court may award--
>       (1) actual damages, but not less than liquidated damages in the

amount of $2,500;
(2) punitive damages upon proof of willful or reckless
disregard of the law;
(3) reasonable attorneys' fees and other litigation costs
reasonably incurred; and
(4) such other preliminary and equitable relief as the court
determines to be appropriate.

18 U.S.C. § 2724.

The essential function of the DPPA is to establish a "regulatory scheme that

restricts the States' ability to disclose a driver's personal information without the

driver's consent." Reno v. Condon, 528 U.S. 141, 144 (2000). The DPPA also limits a

private party's obtainment of personal information. See id. at 146-47. "In enacting

the DPPA, Congress intended to strike 'a critical balance between legitimate

governmental and business needs for this information, and the fundamental right of

our people to privacy and safety.'" Russell v. Choicepoint Servs., Inc., 302 F. Supp. 2d

654, 665 (E.D. La. 2004) (quoting 139 Cong. Rec. S15, 763 (1993)). Much of the

congressional debate preceding the passage of the DPPA "focused on the need to

protect the privacy of persons from stalkers and potential criminals." Pichler v.

UNITE, 542 F.3d 380, 400 (3d Cir. 2008) (Sloviter, J., dissenting) (citing 139 Cong. Rec.

29,469 (1993)).

In this case, Mr. Bailey claims that Mr. Daniels improperly obtained personal

information by calling a RPSO radio operator and receiving identifying information on

Mr. Bailey, all while acting as a private citizen. This claim raises two issues which

must be determined by the Court: (1) whether Mr. Daniels's acts satisfy the statutory

requirements for an improper obtainment claim; and (2) whether Mr. Daniels acquired

the personal information for a "permissible use," as defined by the statute, thereby justifying the obtainment.

### 1.    Improper Obtainment

We first note that the information accessed by Mr. Daniels would suffice to establish liability under the DPPA. The statute defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." Id. § 2725(3). In this case, there is some factual dispute as to whether Mr. Daniels obtained only Mr. Bailey's name, or both his name and address.[6] This discrepancy, however, is immaterial, as either Mr. Bailey's name or his address (and certainly both) would constitute "personal information" under the DPPA. Both parties agree that Mr. Daniels acquired, at a minimum, Mr. Bailey's name from the RPSO operator, and thus, there is no genuine issue of material fact as to whether the information constitutes "personal information," as defined by the statute.

We also note that the source of the information places this incident within the purview of the statute. Under the DPPA, a "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."

---

[6] Mr. Bailey claims that Mr. Daniels obtained and shouted both his name and address. (Doc. 27, p. 4). The defendant, however, claims that "Daniels obtained only the name of Bailey from an unknown radio operator." (Doc. 25-2, p. 2). Mr. Daniels's testimony at the criminal trial seems to indicate that he received Mr. Bailey's address as well as his name. (Doc. 27-1).

Id. § 2725(4).  Because Mr. Daniels called the RPSO operator, reported Mr. Bailey's

license plate number, and obtained (at least) his name, he acquired information

connected with Mr. Bailey's "motor vehicle record" as contemplated by the statute.

Next, the parties dispute whether Mr. Daniels disclosed the information that

he obtained to other persons or entities.  Mr. Bailey contends that Mr. Daniels

shouted out his name and address while threatening that he "would suffer like [he

had] never suffered before," thereby disclosing the personal information to his

hunting companions who were present at that time.  (Doc. 27, p. 4).  Moreover, Mr.

Bailey also maintains that the defendant and the other hunters disclosed his name to

the CPSO deputy who interviewed them at the scene.  Mr. Daniels, by contrast,

claims that he never used or disclosed the personal information.

This dispute is irrelevant to establishing the defendant's liability under the

terms of the statute.  The provision authorizing a civil action states that a party is

liable for damages when he "knowingly obtains, discloses or uses personal

information."  18 U.S.C. § 2724(a).  Likewise, § 2722 makes it unlawful for a party to

"knowingly obtain or disclose personal information."  Id. § 2722(a).  Both provisions

are phrased in the disjunctive, meaning that Mr. Daniels could be liable for either

obtaining, using, or disclosing Mr. Bailey's personal information.  There is no factual

dispute as to whether Mr. Daniels *obtained* the information.  Therefore, assuming the

other statutory elements are satisfied, the defendant could be held liable under the

DPPA for improperly obtaining Mr. Bailey's personal information.

     2.      *Permissible Use*

The DPPA lists fourteen "permissible uses" of personal information obtained from a motor vehicle record. 18 U.S.C. § 2721(b).[7]  The only exemption that potentially applies in this case is found in subsection (4), which allows obtainment of personal information "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court." Id. § 2721(b)(4).[8]  This provision is sometimes referred to as the "litigation exception."

Mr. Daniels argues that the plaintiff must allege an "impermissible use" of the personal information in order to recover under the DPPA.  This argument stems from the district court's opinion in Russell v. Choicepoint Services, Inc., which held that "plaintiffs may not maintain a DPPA claim for improper obtainment under 18 U.S.C. § 2724(a) without alleging an accompanying impermissible use." 302 F. Supp. 2d at 664.[9]  However, the Russell court's holding must be analyzed in context - the court did not hold that all improper obtainment claims require an "impermissible use"

---

[7] These "permissible uses" are presumably what Congress intended when it excluded from the private cause of action obtainment of information for a "purpose . . . permitted under this chapter." 18 U.S.C. § 2724(a).

[8] The first statutory exemption, which allows disclosure of personal information "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions," does not apply here. 18 U.S.C. § 2721(b)(1). In his filings, Mr. Daniels repeatedly emphasized that he was acting as a private individual at the time of the altercation with Mr. Bailey. Although he was a deputy with the RPSO, he was neither acting in his official capacity nor as a private person on behalf of the RPSO.

[9] Of course, the district court's interpretation of the DPPA is not binding authority upon the Court in this case.

11

allegation.  Rather, as evidenced by the sentence following the quote above, the opinion merely requires an "impermissible use" allegation when the defendant is an "authorized recipient" of the personal information, as specified in 18 U.S.C. § 2721(c). Id. at 661, 664 ("The plain language of the DPPA permits entities like [the defendant] to obtain drivers' personal information from DMVs and subsequently resell that information to third parties with a permissible use.").  Although that term is not defined by the statute, the court opined that Congress intended to exclude disclosure restrictions upon "personal information resellers like [the defendant] who are authorized by the state or its DMV to obtain drivers' personal information for the purpose redistribution to persons with 'permissible uses.'" Id. at 665.  Ultimately, the court dismissed the plaintiff's DPPA claim, because "[d]efendant's obtainment of plaintiffs' personal DMV records for the sole purpose of resale and redisclosure does not entitle plaintiff to relief under the DPPA." Id. at 669.

In this case, there is no evidence or contention that Mr. Daniels was an "authorized recipient" of the personal information, or that he acquired it for purposes of resale or redistribution in accordance with a grant of authority from the state of Louisiana.  Rather, Mr. Daniels used his position as a RPSO deputy to obtain the information in his personal capacity.

Nonetheless, we do find that the plaintiff must carry the burden of establishing that the defendant's intended use for the information was not permitted under the DPPA.  The statutory language indicates that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, *for a purpose not*

*permitted under this chapter* shall be liable to the individual to whom the information

pertains." 18 U.S.C. § 2724(a) (emphasis added). On face, then, the prima facie

elements of a successful DPPA claim for improper obtainment include proof that the

personal information was obtained for an impermissible purpose. Moreover, while

our circuit has not definitively ruled upon the burden of proof in DPPA claims, the

Eleventh Circuit has held that the plaintiff must carry the burden of establishing that

the defendant's obtainment of the personal information was not for a permissible

purpose. See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens,

525 F.3d 1107, 1111-14 (11th Cir. 2008). We agree with this conclusion.

Thus, the scope of the litigation exception is of critical importance in this case.

The Third Circuit has held that the exception does not include disclosure of drivers'

motor vehicle records for the purpose of "identify[ing] potential litigants and

claimants who may wish to pursue remedies for [the defendant's] violation of the

DPPA." Pichler, 585 F.3d at 752. However, the Eleventh Circuit affirmed a district

court's grant of summary judgment to a defendant who had acquired the driving

records of 284,000 Florida residents. Thomas, 525 F.3d at 1109-10. The court noted

that the defendant's conduct fell within the litigation exception because, according to

deposition testimony, he was gathering the information in order to contact potential

witnesses for his deceptive trade practices lawsuit against a number of automobile

dealerships. Id. at 1114-15.[10]

---

[10] Courts have consistently dismissed DPPA complaints when the disputed information was disclosed during various types of litigation. See Briggman v. Ross, No. 5:09CV00040, 2009 WL 3254459, at *2 (W.D. Va. Oct. 9, 2009) (dismissing a plaintiff's complaint under the litigation exception when the defendant, the Division of Child Support Enforcement of the Virginia Department of Social Services, accessed the plaintiff's DMV records during the course of litigation);

Mr. Daniels maintains that his actions fall within this exception because he obtained personal information "which could have been used in a future criminal proceeding against Bailey stemming from the theft of his dog and/or the dog's collar." (Doc. 25-1, p. 5).  Mr. Bailey, however, contends that the only intended use of the information was to threaten, intimidate, and possibly retaliate against him.  He also maintains that, in the criminal matter related to this incident, Mr. Daniels testified that he was not going to take any further action (i.e. was not going to call the police and pursue an investigation) after the confrontation.[11]  Lastly, the plaintiff contends that, when asked by an investigating CPSO deputy, Mr. Daniels expressed his willingness to accept money for the dog in order to resolve the dispute, which Mr. Bailey refused to pay.  This testimony, he claims, evidences the fact that his personal information was not obtained for a permissible purpose.

The Court finds that there is no genuine issue of material fact as to whether Mr. Daniels acquired the personal information in this case for a permissible purpose, namely, for purposes of the litigation exception.  Mr. Daniels genuinely believed that a crime had been committed against him; as it turns out, he was correct.  The

---

Shadwell v. Clark, No. 5:09CV00071, 2009 WL 2970515, at *3 (W.D. Va. Sept. 16, 2009) (holding that a plaintiff failed to establish that the litigation exception did not apply when the "defendants had accessed DMV records in 'collusion' with the state courts" during child support litigation); Manso v. Santamarina & Assocs., No. 04 Civ. 10276(LBS), 2005 WL 975854, at *4 (S.D.N.Y. Apr. 26, 2005) (dismissing a plaintiff's DPPA claim when the defendants obtained his address from his DMV records during litigation in the New York Housing Court).

[11] This contention is based upon testimony adduced at the criminal trial from Mr. Daniels, when he was asked: "What were you going to do about me [Mr. Bailey]?"  Mr. Daniels responded: "Nothing.  Just like I done.  We had our discussion.  I left.  You left.  You called the Catahoula Parish jail.  I was getting my collar.  And that was finished business."  Mr. Daniels was then asked: "If I [Mr. Bailey] had not come along, there would have been no more to this?"  He responded: "As far as I'm concerned, it was over.  I was convinced that you had killed my dog and tried to steal my collar." (Doc. 27-1, p. 32).

information was acquired in the fevered pitch of a "hot-blooded" confrontation. Under these circumstances, we cannot say that the information *was not* acquired for the purpose of prospective litigation, be it criminal or civil, as contemplated by the litigation exception to the DPPA. See 18 U.S.C. § 2721(b)(4).  Thus, the defendant's reliance upon the exception is highly plausible.

More importantly, the plaintiff has not raised a genuine issue of material fact regarding Mr. Daniels's permissible purpose for obtaining the information.  Mr. Daniels's alleged statements that he would see to it that Mr. Bailey would suffer do not indicate an impermissible purpose; rather, if these statements were made, they may well have indicated simply that Mr. Daniels intended to pursue some sort of litigation against him.

The testimony from the criminal trial relied upon by Mr. Bailey is similarly unavailing.  Mr. Daniels did not indicate that he never intended to use the information to press charges or pursue litigation against Mr. Bailey.  Rather, he testified that the confrontation was over, and that he was "convinced" that Mr. Bailey had killed his dog and attempted to steal the dog's tracking collar.  The fact that Mr. Daniels was, at some point, willing to accept money for the dog, or failed to contact the CPSO himself, likewise does not indicate that he had no permissible purpose; rather, it indicates that, during a heated series of events, Mr. Daniels may have considered alternative means of resolving the dispute.  None of these arguments calls into question the notion that, *at the time Mr. Daniels called the RPSO operator and acquired the information*, he did so for the permissible purpose of investigating a

15

possible crime against himself in anticipation of future litigation.

In sum, with the extremely odd facts of this case, Mr. Bailey has failed to present a genuine issue of material fact regarding whether Mr. Daniels obtained the personal information for a use not permitted by the statute.  Such proof is a required element in order to maintain an improper obtainment claim under the DPPA.[12] Therefore, the defendant's motion for summary judgment will be GRANTED on the DPPA claim.[13]

3.    *False Representation*

Finally, Mr. Bailey argues that Mr. Daniels made false representations in order to obtain the personal information from the RPSO operator.  Specifically, he maintains that although Mr. Daniels was not acting in an official capacity at the time of the encounter, he misrepresented himself to be acting with the authority of a sheriff to Mr. Bailey.  Moreover, the plaintiff argues that Mr. Daniels made false representations to the RPSO operator by choosing not to identify himself, to state his location or the

---

[12] We also note that the DPPA was not specifically enacted to cover this type of situation. Indeed, the Court finds it highly improbable that Congress ever contemplated this type of claim, in which an individual acting in his personal capacity used his connection with a state law enforcement agency to acquire information on a person whom he believed had committed a crime against him.  Instead, as we discussed above, Congress was seeking to prevent the wholesale distribution by state DMVs of the private information contained in motor vehicle records in order to safeguard the privacy and security of drivers.  See Reno, 528 U.S. at 144.

[13] In his opposition to the defendant's motion for summary judgment, Mr. Bailey submits two procedural objections.  The first is to the defendant's use of an affidavit, which Mr. Bailey claims was obtained in the manner of a deposition, without giving him proper notice under Fed. R. Civ. P. 30.  However, the exhibit is an affidavit, not a deposition, and the use of the phrase "deposed as follows" indicates merely that Mr. Daniels stated facts for purposes of the affidavit.  Rule 30, then, does not apply.  Second, Mr. Bailey claims that the defendant's summary judgment motion relied upon trial transcripts which were ordered to be destroyed.  However, the plaintiff attached trial transcripts to his own summary judgment motion, and the testimony referenced in this ruling was submitted to the Court by the plaintiff himself.  The transcript attached by the defendant merely evidenced Mr. Bailey's conviction, a fact which was already known to this Court, and which is, in truth, irrelevant to our ruling.

reason for his call, or to specify that he was not pursuing an official investigation.

These arguments fail to warrant relief for two reasons.  First, the provision referring to false representations is found only in the criminal portion of the statute, and not in the section authorizing a civil action.  Under the DPPA, it is "*unlawful* for any person to make false representation to obtain any personal information from an individual's motor vehicle record."  18 U.S.C. § 2722(b) (emphasis added).  However, Congress specifically authorized a private cause of action only against a person who "knowingly obtains, discloses or uses personal information . . . for a purpose not permitted under this chapter."  See id. § 2724(a).  Under the terms of the statute, it appears that criminal sanctions may be imposed upon persons for making false representations and for improper obtainment of personal information, but civil penalties may be imposed only for improper obtainment.

Second, even if we were to include false representations within the civil action in this instance, there is simply no evidence before the Court indicating that Mr. Daniels made a false representation.  Mr. Bailey claims that Mr. Daniels called the RPSO "radio operator, greeted her by name, and stated, 'I need you to run a plate for me.'" (Doc. 27, p. 4).  Mr. Daniels did not give his name to the operator, possibly because he expected her to recognize him solely by his voice.  Mr. Bailey does not allege that Mr. Daniels claimed to be on duty, conducting a legal investigation, or within Rapides Parish.  While Mr. Daniels clearly used his position as a deputy sheriff to acquire the information, there is no contention before the Court that he misrepresented any fact in order to do so.  Likewise, the plaintiff did not submit nor

17

obtain any proof from the operator as to the nature of the conversation between Mr. Daniels and the RPSO.  Beyond what he claims to have heard Mr. Daniels say, then, any arguments made by Mr. Bailey pertaining to false representations are speculative hearsay.  Therefore, no genuine issue of material fact is present, and Mr. Daniels is entitled to judgment as a matter of law as to this claim.

## IV.   Conclusion

We have made a concerted effort to interpret the governing statutes accurately, and to take all of the parties' arguments into account.  While some factual disputes remain in this case, those disputes are not material to the outcome of the litigation.  We also repeat that all evidence which would be pertinent to the Court's determination at trial is already before us, and we have reviewed that evidence thoroughly.  This lawsuit arose from a highly fluid and emotional situation, and the terms of the DPPA, although not frequently interpreted, impose a fairly heavy burden upon the plaintiff.  Under these circumstances, Mr. Bailey's claims fail to survive the analysis demanded by Fed. R. Civ. P. 56(c).

Because there are no genuine issues of material fact remaining in the case, and Mr. Daniels is entitled to judgment as a matter of law under the requirements of the DPPA , the defendant's motion for summary judgment is hereby **GRANTED.**

SIGNED on this 30th day of December, 2009, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

18